## THE BRANCH OF THE BANK OF THE STATE OF ALABAMA, AT DECATUR, v. RHODES.

1. In a suit commenced by notice and motion at the instance of the bank against the second indorser of a bill drawn in Alabama on a firm in New Orleans—on a trial before the jury, the plaintiff offered the protest of a bill agreeing in all respects with that described in the notice, and then produced by him, save only, that the bill described in the protest, and copied thereon, purported to be addressed to "Gamble & Murrah," and the ori-

ginal bill was addressed to Gamble & Murray: *Held*, that although the protest, unaided by other testimony, may be insufficient, yet it should be admitted that the plaintiff may show some or all of the following facts, or others of a kindred import, viz., that "Murrah" was pronounced "Murray;" that there was no such house in New Orleans as the address of the bill indicated; that "Gamble & Murrah" were the factors or correspondents of the drawer in that city; that he was in the habit of drawing on them; that "Murrah" was sometimes written "Murray" by persons who were not accurate spellers. Such evidence would have supplied the defects of the protest, and show that was intended to apply to the bill sued on.

Writ of Error to the Circuit Court of Morgan.

This was a proceeding by notice and motion under the statute, at the suit of the plaintiff, against the defendant as the second indorser of a bill drawn in this State and payable in New Orleans. The cause was tried upon the plea of *non assumpsit*, a verdict returned for the defendant, and judgment rendered thereon. On the trial, the plaintiff offered as evidence the protest of a bill of exchange agreeing in all respects with that described in the notice and then produced by him, save only, that the bill described in the protest and copied thereon purported to be addressed to "Gamble & Murrah," and the original was addressed to "Gamble & Murray;" upon motion of the defendant, this paper was excluded from the jury, and the plaintiff excepted.

S. PARSONS, for the plaintiff in error, insisted that the discrepancy between the protest and the bill was not such as to warrant the rejection of the latter. It is not necessary that the protest should state the names of the parties *literally*. The change of one or more letters, if the pronunciation is not affected, is not material. It cannot be assumed that "Murrah" is not pronounced "Murray." The letter *h* may be *silent* or sounded *long*; if so, the sound is identical. [Minor's Rep. 197.]

L. P. WALKER, for the defendant. The protest certifies that the bill indorsed thereon is a true copy of that which

the notary was required to present to the drawees for acceptance, and the bill produced varying from it, the presumption cannot be indulged that the protest applies to it. [Clay's Dig. 380; 7 Ala. Rep. 108; 3 Phil. Ev. C. & H's Notes, 1052.] The bill must be copied upon the protest literally, and the mistake in a name of a single letter will be a fatal variance, although the sound of the name is not changed. [4 Phil. Ev. C. & H. ed. and Notes, 4-7.] But if it be competent to describe the bill according to its legal effect, the description must be such as to show its identity. [2 Phil. Ev. C. & H's Notes, 250; 4 Ala. Rep. 184.] "Sound, which is the substance of a name," is not preserved in the protest— the difference in the spelling alters the sound, and consequently makes a different name. [7 Am. Com. Law Cas. 56, and Note; 3 Pet. Dig. 78; 2 Phil. Ev. C. & H's Notes, 520; 4 Id. 7; see Minor's Rep. 197.] The court cannot know that "Gamble & Murray" were intended for "Gamble & Murrah," and that they are not distinct firms. It was competent for the notary to explain or contradict his protest, and the failure to adduce his evidence turns every doubt against the plaintiff. [7 Ala. Rep. 108; 9 Ala. Rep. 631; 2 Phil. Ev. C. & H's Notes, 293; 2 U. S. Dig. 61, § 3.]

COLLIER, C J.—It is conceded that the paper on which the defendant is sought to be charged as an indorser, is a foreign bill; consequently, it devolved upon the plaintiff to show that it had been duly protested. A protest is said to be a solemn declaration on behalf of the holder against any loss to be sustained by the non-acceptance, or the non-payment of the bill, as the case may be. "It is highly important, even if it be not absolutely essential, in all cases, that a copy of the bill should be prefixed to all protests, with the indorsements thereon, *verbatim*, whenever practicable, and that the reasons given by the drawee for non-acceptance or non-payment, should also be stated in the protest." [Story on Bills, § 276.] Chitty, in his treatise on Bills, (9 Am. ed. 363) remarks: "A copy of the bill should, it is said, be prefixed to all protests, with the indorsements transcribed *verbatim*, and with an account of the reason given by the party why he does not honor the bill." Neither of these learned

authors refer to any adjudged case; but merely cite, Pothier de Change, n. 135, 145, 148; Pardessus Droit Comm. Art. 419; Code de Comm. 174.

In Bryden v. Taylor, 2 Har. & J. Rep. 396, the court considered that the minutes of the proceedings of a notary public were records under the courtesy of nations; and that a copy under the hand and official seal of the notary was sufficient evidence of the protest of a foreign bill for non-acceptance.

These citations we think do not establish that a protest is so conclusive as evidence, that no extrinsic proof is admissible to aid it, or show its adaptation to the bill. Neither of the elementary writers whose works we have cited, inform us what are their opinions as to the necessity of making a copy of the bill upon the protest. It is certainly the practice to do so, yet if the copy were omitted, and the protest identified the bill by a description so minute as to leave no ground for mistake, we should be inclined to hesitate before we would pronounce against it.

In Sterry v. Robinson, 1 Day's Rep. 11, a bill of exchange was addressed to Josiah R., meaning Joshua R. The court held that the mistake in the bill of the christian name of the drawee, is immaterial, if the bill be presented to the person intended; and the declaration might alledge the mistake and due presentation. [See also Doug. Rep. 55.] So in Ross, et al. v. Planters' Bank, 5 Hump. Rep. 335, the notary was permitted to prove at the circuit that in the copy of the note on the back of the protest, he made a mistake of the date— dating it a year in advance of the true time. The notary's entry of the protest read by him to the jury, had the correct date of the note. The supreme court of Tennessee said, "similar corrections of the notarial record, furnished as notice to the parties, have been often allowed, and are sanctioned by many authorities referred to in the argument. The court in such cases taking care to leave the question properly to the jury as to the identity of the instrument mentioned in the notice with that sued on, and as to whether the parties, notwithstanding such mistake, had substantial notice, as to what security it was intended to fix their liability by the notarial protest actually furnished them."

The case of the Branch Bank at Decatur v. Hodges, 9 Al. Rep. 631, is unlike the present. There, the protest for *non-acceptance* was unobjectionable, but in the certificate that notices were sent, the name of the second indorser was mistaken; this it was holden did not vitiate the protest; and even if the mistake was in describing the bill, it would not avail the drawers in an action against them. It was also held that a protest for *non-payment*, which misdescribed the date of the bill, was inadmissible.

Conceding that a copy of the bill should accompany and make part of the protest, yet a mere literal variance in the spelling of a word, as *abby* for *abbey*, *undertood* for *understood*, or a similar slip of the pen, not changing the word to one of different signification, will be overlooked. [3 Stark. Ev. 1587; Alebery v. Walby, 1 Stra. Rep. 229.] So, the mis-spelling of the name of an individual will not vitiate, if the sound be not changed; as where one is *Segrave* and the other *Seagrave*. [2 Stra. Rep. 889.]

In the case at bar the notary should have alledged the presentment of the bill to " Gamble *&* Murrah," if this was the name of the firm who were intended as the drawees, but he should have copied it literally. Yet a departure in this respect we cannot think would be always fatal. It may be that bills are not always legibly written, and all notaries are not competent to make a *fac simile;* if trivial mistakes in a word or a name were allowed to exclude a protest, injustice would not unfrequently result.

There are numerous cases in which it has been allowed to look out of the instrument to the circumstances to which its terms either expressly or tacitly refer, or which attend its execution. [3 Phil. Ev. C. & H's Notes, 1406-7, *et post.*] So it is well settled that a devise, bequest, or grant, shall not fail, or vest in an improper person, in consequence of a misnomer of the party intended to take, where the intention of the testator, or grantor, is expressed in the instrument. For the purpose of effectuating that intention, parol evidence is received. [3 Phil. Ev. 1368 to 1376.] The decisions upon this point are sustained by the maxim, *falsa demonstratio non nocet.*

If *h* in the name of *Murrah* be sounded, then it is not

Branch Bank at Decatur v. Rhodes.

*idem sonans* with *Murray*; but if it be silent, then the pronunciation is the same. Perhaps it would be too much to assume the indentity of the names, yet we cannot avoid the conclusion, that extrinsic proof is admissible to explicate the matter. The dissimilarity of the name is not such as to make it a legal conclusion it is not a case of mis-spelling. It may be, that the bill was intended to be drawn on "Gamble & Murrah," whose names are really pronounced "Gamble & Murray." If so, does not the case cited from Day's Reports show, that the presentment should have been made to these drawees? Here the suit was commenced by notice, and a motion consequent upon it, so that the plaintiff could not alledge upon the record the mistake in the address of the bill, yet it was competent for him to prove, what was necessary to have alledged and proved if suit had been brought in the ordinary manner, and a declaration filed in the usual form.

The resemblance of the names of the drawees, as written upon the face of the bill, and in the protest, is such, that it cannot be assumed, that the bill produced by the plaintiffs is not the one to which the protest was intended to apply; especially, as in all other respects there is a literal agreement. So that, although the protest, unaided by other testimony, may have been insufficient, yet the court should not have rejected it as altogether irrelevant. Upon its being admitted, the plaintiff might have shown, that 'Murrah' was pronounced as 'Murray;' that there was no such house in New Orleans as the address of the bill indicated; that 'Gamble & Murrah' were the factors, or correspondents of the drawer in that city; that he was in the habit of drawing on them; that 'Murrah' was sometimes written 'Murray,' by persons who were not accurate spellers, &c. Such proof would of course follow, and could not precede the introduction of the protest; and as it would be addressed to the jury, the court should have admitted the protest, that the plaintiff might, if practicable, have supplied its defects. [1 Ala. R. 83.]

What we have said, will sufficiently show the error of the ruling of the circuit court. Its judgment is therefore reversed, and the cause remanded.